IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEARL RAY, and ANDREW RAY, SR., ) <br> ) <br> *Plaintiffs*, ) <br> v. ) <br> ) <br> MUHAMMAD TABRIZ, MD., ) <br> ) <br> *Defendant*. ) <br> v. ) <br> ) <br> BLUE CROSS AND BLUE SHIELD ) <br> ASSOCIATION, as carrier for Federal ) <br> Employee Program, ) <br> ) <br> *Lien Holder*. ) | No. 23 C 1467 <br><br> Hon. Virginia M. Kendall |

**MEMORANDUM AND ORDER**

This case asks whether the Court has jurisdiction over a dispute between two private parties regarding the reimbursement provision in a federal insurance contract. The Court previously denied Pearl and Andrew Ray Sr.'s (the "Rays") motion to remand because the question implicates federal common law, thus conferring federal question jurisdiction under 28 U.S.C. § 1331. The Rays now move to reconsider. Taking a fresh look at the issue, the Court grants the motion for reconsideration and remands the case to state court.

**BACKGROUND**

Pursuant to the Federal Employees Health Benefits Act ("FEHBA"), the United States Office of Personnel Management ("OPM") contracts with private insurers, like Blue Cross and Blue Shield Association ("BCBSA"), to provide healthcare plans for federal employees. (Dkt. 1 ¶ 5). The contract states that BCBSA has a right to reimbursement for benefits paid to an enrollee if that person is

1

awarded damages or receives a settlement for a condition or injury from a third party. (*Id.* at ¶ 6).

Here, Pearl Ray, an enrollee, and her husband, Andrew Ray Sr., brought a medical malpractice suit in state court against eleven defendants, including Dr. Muhammad Tabriz, for medical care rendered in 2016. (*Id.* at ¶ 4; Dkt. 11 ¶ 1). BCBSA paid $218,954.87 in benefits in connection to the Rays' medical care. (Dkt. 1 ¶ 4). The Rays' medical malpractice suit settled with ten defendants, proceeding only with Dr. Tabriz to trial. (Dkt. 11 ¶ 3). BCBSA placed a reimbursement lien on the Rays' settlement for the full benefits provided. (Dkt. 1 ¶ 6). The Rays do not dispute the reimbursement right, but rather its amount. In their Motion for Adjudication filed in state court, the Rays argued that the Illinois common fund doctrine reduced BCBSA's reimbursement by a proportionate amount of the Rays' attorney's fees and costs. (*Id.* at ¶ 7). In contrast, BCBSA contended the enrollee must reimburse BCBSA for all benefits received, specifically noting that the right to recover will not be subject to attorney's fees and costs reduction. (*Id.* at ¶¶ 8–9).

On March 9, 2023, BCBSA removed the entire case, including the Rays' medical malpractice claim against Dr. Tabriz, to federal court, arguing that the Court had federal question jurisdiction because federal common law governed the OPM-BCBSA contract. (*Id.*) The Rays then filed a motion to remand that argued the Court did not have jurisdiction because this action does not arise under federal law. (Dkt. 11). On July 11, 2023, the Court issued an Order denying the Rays' motion. (Dkt. 23). Later that month, the Rays filed a motion to reconsider this Court's denial. (Dkt. 25).

## **LEGAL STANDARD**

A district court will grant a motion for reconsideration when: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue

to the court. *See Bank of Waunakee v. Rochester Cheese Sales Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A decision to grant a motion for reconsideration falls within the district court's discretion. *Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## DISCUSSION

Our analysis begins and ends with federal common law. There exist a few uniquely federal interests, "so committed by the Constitution and laws of the United States to federal control," that federal courts have the authority to fashion uniform federal common law to preempt and displace state law. *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988). The Supreme Court in *Boyle* employed a two-part test to determine if an interest is "committed" to federal control: (1) whether the circumstances justified a court-fashioned federal-law rule to protect uniquely federal interests, and, if so, (2) whether there was a significant conflict between an identifiable federal policy or interest and the operation of state law. *Id.* at 504, 507. If federal common law applies, a federal court has jurisdiction over the case. *See Connors v. Amax Coal Co.*, 858 F.2d 1226, 1229 (7th Cir. 1988).

*Empire HealthChoice Assurance, Inc. v. McVeigh* applied *Boyle*'s test to determine if federal common law governed reimbursement claims under the OPM-BCBSA contract. 547 U.S. 677 (2006). The dissent in *Empire HealthChoice* argued that the controversy arose under federal common law, describing the OPM-BCBSA contract as "pervasively federal" and relegating the reimbursement and subrogation provisions within it to "a few scattered islands in a sea of federal contractual provisions." *Id.* at 692. The majority rejected this characterization by distinguishing benefits from reimbursements. *Id.* Contrary to the dissent's focus on FEHBA-authorized contracts at large, the relevant inquiry was specifically "trained on the matter of reimbursement" and the majority pointedly stated that these "provisions are linked together and depend upon the recovery from a third party under terms and conditions *ordinarily governed by state law*." *Id.* at 692–93 (emphasis added). The majority agreed with the Second Circuit's ruling that Empire HealthChoice had not demonstrated a "significant

3

conflict…between an identifiable federal policy or interest and the operation of state law." *Id.* (quoting *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 150 (2d Cir. 2005) (Sack, J., concurring)). In other words, no federal common law. "Unless and until that showing is made, there is no cause to displace state law, much less to lodge this case in federal court." *Empire HealthChoice*, 547 U.S. at 693.

Still, *Empire HealthChoice* never foreclosed the possibility that federal common law could apply to an OPM-BCBSA contract. And BCBSA seizes upon this opening, arguing that *Empire HealthChoice* is distinguishable because there is a conflicting state law here—the Illinois common fund doctrine. That doctrine "allows a person who incurs attorney's fees in obtaining a judgment or settlement that confers benefit on another to deduct a portion of the fee," therefore, directly conflicting with BCBSA's right for full reimbursement. *Blue Cross Blue Shield of Illinois v. Cruz,* 495 F.3d 510, 511 (7th Cir. 2007) ("*Cruz II*").[1]

While the argument is attractive, BCBSA glosses over the other half of *Boyle*'s test. BCBSA argues that both the Supreme Court's and the Second Circuit's decisions in *Empire HealthChoice* have found uniquely federal interests in regulating the OPM-BCBSA contract's reimbursement provision. But neither case supports such a definitive assertion. In the Supreme Court decision, the majority stated that there are distinctly federal interests but dampened their significance because "countervailing considerations control[led]…[a]mong them, the reimbursement right in question, predicated on a FEHBA-authorized contract, *is not a prescription of federal law*." *Empire HealthChoice*, 547 U.S. at 696 (emphasis added). Moreover, BCBSA heavily relies on the Second Circuit's concurrence to show a uniquely federal interest, but there lie two problems. First, a

---

[1] *Cruz II* reconsidered and reversed its earlier decision in *Blue Cross & Blue Shield of Ill., a Div. of Health Care Serv. Corp. v. Cruz*, 396 F.3d 793, 799 (7th Cir. 2005), *abrogated by* Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677 (2006) ("*Cruz I*").

4

concurrence is not a holding. Even though the concurrence found uniquely federal interests, the case itself declined to address the issue. *Empire HealthChoice*, 396 F.3d at 141 (finding the court need not address whether the uniquely federal interests prong of *Boyle* was satisfied because Empire HealthChoice failed to "demonstrate that the operation of a New York state law creates an 'actual, significant conflict' with those interests") (citation omitted). At best, this issue is inconclusive. Second, and more importantly, the Seventh Circuit addressed this question in *Cruz II* and found that there was no uniquely federal interest.

The facts in Cruz are near-identical to the ones here. Blue Cross contracted with OPM to provide federal healthcare benefits to federal employees. *Cruz II*, 495 F.3d at 511. Cruz, an enrollee, was injured in an automobile accident and Blue Cross paid $4,682.20 in benefits to cover the injuries. *Id.* Cruz brought a suit against the third-party for his injuries and recovered $30,000 in a settlement and paid a third of that amount in attorney's fees. *Id.* Blue Cross wanted the entire $4,682.20 reimbursed but Cruz argued that under the Illinois common fund, he could deduct a third as Blue Cross's share of the attorney's fees. *Id.* The Seventh Circuit first considered this question before *Empire HealthChoice* was decided and found federal common law under *Boyle*——reimbursement on the federal treasury is a significant federal interest and the federal policy of uniform health benefits conflicted with state law. *Cruz I*, 396 F.3d at 799.

After *Empire HealthChoice*, the Seventh Circuit revisited the issue and reversed its decision in *Cruz I*. In doing so, the *Cruz II* court noted *Empire HealthChoice*'s distinction between benefits and reimbursements. *Cruz II*, 495 F.3d at 513. The federal interest under FEHBA was to ensure that the amount of *benefits* for federal employees was uniform across states and benefits were unaffected by the common fund doctrine. *Id.*; *see also Empire HealthChoice*, 547 U.S. at 683 ("FEHBA assigns to OPM responsibility for negotiating and regulating health-benefits plans for federal employees."); *Empire HealthChoice*, 396 F.3d at 145 (finding that Congress's stated intent under FEHBA is to

5

maintain uniformity in FEHBA benefits). "[The common fund] doctrine just affects how much of a tort judgment or other judgment against (or settlement with) a third party the plaintiff gets to keep and how much he must give the insurer." *Cruz II*, 495 F.3d at 513. So, with a uniform set of healthcare benefits, there is a uniquely federal interest. But with reimbursement of those benefits, the *Cruz II* court found that the monetary dispute between insured and insurer, two private parties, should not be placed "under the complete governance of federal law, to be declared in a federal forum… The state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine the lawyer's part in obtaining, and his or her fair share in, the tort recovery." *Id.* at 512 (quoting *Empire HealthChoice*, 547 U.S. at 701). To argue that benefits should include "every financial incident of an illness or injury," would make "national uniformity unattainable without a federal takeover of the entire tort system." *Cruz II*, 495 F.3d at 514. As such, the *Cruz II* court did not find a uniquely federal interest in regulating reimbursement provisions and affirmed the district court's dismissal for want of federal jurisdiction.

Fighting against binding precedent, BCBSA attempts to mute *Cruz II*'s impact by arguing that a subsequent Supreme Court case, *Coventry Health Care of Missouri, Inc. v. Nevils*, abrogates its holding. 581 U.S. 87 (2017). BCBSA misunderstands the context of *Nevils*—that case deals with a choice-of-law question, not a jurisdiction-conferring one. In fact, it reaffirms the jurisdictional decision in *Empire HealthChoice*. *See id.* at 97 ("In [*Empire HealthChoice*], we considered the discrete question whether 28 U.S.C. § 1331 gives federal courts subject-matter jurisdiction over FEHBA reimbursement actions… Our principal holding was that § 1331 did not confer federal jurisdiction."). The Supreme Court in *Nevils* reviewed the Missouri Supreme Court's decision to apply state law over FEHBA's § 8902(m)(1) to a reimbursement claim under the OPM-BSBCA contract. *Id.* at 94. In reversing the decision, the Supreme Court found that Congress intended § 8902(m)(1) to preempt conflicting state law and remanded the case to state court. *Id.* at 99. But *Nevils* never

6

referenced federal common law or federal question jurisdiction. Moreover, its holding does not conflict with *Cruz II*, which also remanded the case to state court and foreshadowed the issues in *Nevils* by providing guidance on whether § 8902(m)(1) preempted the common fund defense. *Cruz II*, 495 F.3d at 514–15. Regardless of which law is applied, both decisions resulted in the state court, and not the federal court, with jurisdiction.

Lastly, BCBSA states in a footnote that this Court has jurisdiction under 28 U.S.C. § 1442, federal officer's removal. In its opposition to remand, BCBSA agreed with the Rays that under 28 U.S.C. § 1442(d)(1), only the Motion for Adjudication, and not the entire case, could be removed to federal court unless there was a separate basis for removal. (Dkt. 16 at 7). There, BCBSA hung its hat on federal question jurisdiction. But as discussed, there is no federal question jurisdiction, which means no separate basis for removal. Thus, the entire case will be remanded.

## CONCLUSION

For the foregoing reasons, the Rays' motion for reconsideration [25] is granted. The Clerk of Court is directed to remand the case to the Circuit Court of Cook County forthwith.

_____
Virginia M. Kendall
United States District Judge

Date: October 29, 2023