THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEARL RAY, and ANDREW RAY, SR., | ) | |
| | ) | |
| *Plaintiffs*, | ) | No. 23 CV 1467 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| MUHAMMAD TABRIZ, MD., | ) | |
| | ) | |
| *Defendant*, | ) | |
| v. | ) | |
| | ) | |
| BLUE CROSS BLUE SHIELD ASSOCIATION, as carrier for Federal Employee Program, | ) ) ) | |
| | ) | |
| *Lien Holder*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs Pearl Ray and Andrew Ray, Sr.'s ("the Rays") Motion for Attorney Fees [34]. Pursuant to 28 U.S.C. § 1447(c), the Rays seek attorney fees and costs incurred as a result of Blue Cross Blue Shield Association's ("Blue Cross") improper removal of the medical malpractice claims this Court remanded to Illinois state court. (Dkt. 44 ¶¶ 7, 9).[1] For the following reasons, the Court grants the Rays' Motion for Attorney Fees [34].

**BACKGROUND**

The Rays brought medical malpractice claims under state tort law against several medical providers in Illinois state court. (Dkt. 1-1 ¶ 1). The Rays settled with each defendant, except Defendant Dr. Muhammad Tabriz. (*Id.* at ¶ 2). As the carrier of Ms. Ray's Federal Employees

---

[1] The Court construes the Rays' Reply as an amendment to the Motion for Attorney Fees insofar as it modifies the request in light of the Seventh Circuit's Opinion, (Dkt. 42), in this case.

Health Benefits (FEHB) plan,[2] specifically the Service Benefit Plan ("the Plan"), Blue Cross asserted a lien on the settlement to secure the Rays' obligation to reimburse Blue Cross for the benefits it paid in connection with Ms. Ray's injuries pursuant to the terms of the Plan. (Dkt. 8 at 2). The Rays filed a Motion for Adjudication of Blue Cross's reimbursement lien, arguing that the reimbursement amount should be reduced by the amount of the Rays' attorney fees under Illinois's common fund doctrine. (Dkt. 1-1 ¶¶ 7–9).

Blue Cross then removed the entire action, including the Motion for Adjudication of Blue Cross's reimbursement lien and the medical malpractice claims against Dr. Tabriz, from Illinois state court to this Court. (Dkt. 1 ¶¶ 1, 3–4.). Blue Cross removed on federal officer grounds, pursuant to 28 U.S.C. § 1442, and federal question grounds, pursuant to 28 U.S.C. § 1441. (Dkt. 1 ¶ 11). In its first Remand Order, the Court remanded the entire case on the basis that the Court lacked federal question jurisdiction over the entire action. (Dkt. 31 at 7). In its second Remand Order, the Court rescinded only its remand of the Motion for Adjudication of Blue Cross's reimbursement lien on the basis that the Motion was removable on federal office grounds. (Dkt. 47). So, the Court now exercises jurisdiction over the Motion separately from the remanded medical malpractice claims. (*Id.*). The Rays now move for attorney fees and costs incurred as a result of the improper removal of the medical malpractice claims. (Dkt. 44 at ¶¶ 7, 9).

## LEGAL STANDARD

A federal district court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The decision to award attorney fees is "left to the district court's discretion," but the court's discretion must be

---

[2] Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. § 8902(a).

guided by "the standard for awarding fees [that] . . . turn[s] on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139–41 (2005). Under the reasonableness standard, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

The reasonableness of the basis for removal is determined "by examining the clarity of the law at the time the notice of removal was filed." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792–93 (7th Cir. 2007); *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008) (finding a reasonable basis for removal where the only authority was an out-of-circuit opinion that addressed the issue in dictum). Accordingly, "if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." *Lott*, 492 F.3d at 793. But "if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees." *Id.* (finding reasonable basis for removal where district courts were split on the issue and no circuit court had rejected defendant's argument). To award attorney fees, a district court need only find that removal is "clearly improper . . . but not necessarily frivolous." *Jackson Cnty. Bank v. DuSablon*, 915 F.3d 422, 424 (7th Cir. 2019) (finding defendant lacked reasonable basis for removal where plaintiff "did not plead any federal claim nor [was] any federal question apparent on the face of [the] complaint"). Seventh Circuit precedent can clearly establish the law on a particular issue. *See Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009) (finding defendant lacked reasonable basis for removal where plain application of Seventh Circuit precedent foreclosed defendant's argument).

3

**DISCUSSION**

The Rays seek attorney fees incurred as a result of the improper removal of the remanded medical malpractice claims. (Dkt. 44 ¶¶ 7, 9); *see* 28 U.S.C. § 1447(d)(1). Both parties agree that the entire case—the medical malpractice claims in addition to the Motion for Adjudication—would have been removable only if the Court had federal question jurisdiction over the Motion for Adjudication.[3] (Dkt. 16 at 7). Because, however, the only proper basis for removal was federal officer grounds, only the Motion for Adjudication was removable. 28 U.S.C. § 1447(d)(1) ("If removal is sought for a proceeding . . . [,] and there is no other basis for removal, only that proceeding may be removed to the district court."); *Ray v. Tabriz*, 110 F.4th 949, 955, 957 (7th Cir. 2024). The propriety of the Rays' request for attorney fees therefore turns on whether clearly established law foreclosed Blue Cross's removal of the entire case on federal question grounds at the time Blue Cross filed the notice of removal. *Lott*, 492 F.3d at 793. Because clearly established law in the form of Supreme Court and Seventh Circuit precedent squarely foreclosed Blue Cross's removal of the entire case on federal question grounds at the time Blue Cross filed the notice of removal, Blue Cross lacked a reasonable basis for removal of the entire case. Accordingly, the Court grants the Rays' Motion for Attorney Fees.

---

[3] If the Court had federal question jurisdiction over the Motion for Adjudication of Blue Cross's reimbursement lien, then the medical malpractice claims arising under state tort law also would have been removable, even if the Court determined the claims fell outside the Court's supplemental jurisdiction, severed them from the Motion for Adjudication, and remanded them to the state court. *See* 28 U.S.C. § 1441(c) (joinder of federal and state law claims in cases removed based on federal question jurisdiction); 28 U.S.C. § 1367 (governing supplemental jurisdiction over state law claims).

I. **Clearly Established Law**

   a. **Removal on Federal Question Grounds in FEHBA Reimbursement Actions**

Federal district courts have original jurisdiction over all civil actions "arising under" federal law. 28 U.S.C. § 1331. Civil actions in state court may be removed to federal courts where the claim arises under federal law. 28 U.S.C. § 1441(a); *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). Under the well-pleaded complaint rule, a claim arises under federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As a general rule, a defense premised on the pre-emptive effect of federal law therefore does not provide a basis for removal. *Beneficial Nat. Bank*, 539 U.S. at 6; *Franchise Tax Bd. of State of California v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 28 (1983); *Caterpillar*, 482 U.S. at 399 ("But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform he action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.") (emphasis in original).

Upon removing the entire case on federal question grounds, Blue Cross argued the reimbursement dispute with the Rays arises under federal law because federal common law governs the dispute under the *Clearfield* doctrine. (Dkt. 1 ¶¶ 20–23; Dkt. 16 at 7–10); *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 367 (1943). The *Clearfield* doctrine holds that "a few areas, involving 'uniquely federal interests,' . . . are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts—so-called 'federal common law.' " *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). Blue Cross asserted that "federal common law displaces the Illinois common fund doctrine and governs the

5

action because the common fund doctrine significantly conflicts with uniquely federal interests in FEHBA reimbursement disputes." *Ray*, 10 F.4th at 953 (7th Cir. 2024); (Dkt. 1 ¶ 22–23).

To apply, the *Clearfield* doctrine requires two elements. *Boyle*, 487 U.S. at 507. First, the case must involve "an area of uniquely federal interest," such as the civil liability of federal officials and the rights of the United States under its contracts. *Id.* at 504–05, 507. Second, "a 'significant conflict' [must] exist[] between an identifiable 'federal policy or interest and the [operation] of state law],' . . . or the application of state law would 'frustrate specific objectives' of federal legislation." *Id.* at 507 (first quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 69 (1966); then quoting *Unites States v. Kimbell Foods*, 440 U.S. 715, 728 (1979)).

In *Empire Healthchoice Assurance, Inc. v. McVeigh*, the Supreme Court considered whether a federal district court had federal question jurisdiction over a reimbursement action brought in federal court by Empire, the local administrator of a FEHB plan carried by Blue Cross Blue Shield Association, against the estate of a former enrollee who obtained a settlement in connection with injuries for which Empire had previously paid the medical bills. 547 U.S. 677, 682 (2006). The Court held the reimbursement claim did not arise under federal law and the federal district court properly dismissed the claim for lack of subject-matter jurisdiction. *Id.* at 683. The *Clearfield* doctrine was among the potential bases for federal question jurisdiction the Court rejected. *Id.* at 690–93.

Mindful that federal courts "have no warrant to expand Congress' jurisdictional grant 'by judicial decree,' " *id.* at 696, the Court found "no cause to displace state law, *much less to lodge this case in federal court*" because "Empire [did] not demonstrate[] a 'significant conflict . . . between an identifiable federal policy or interest and the operation of state law.' " *Id.* at 693 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 150 (2d Cir. 2005) (Sack,

J., concurring) (emphasis added). Though the common fund doctrine was not at issue in the case, the Court's reasoning in *Empire* was nonetheless controlling in this case. In its holding on the *Clearfield* doctrine issue, the Court was careful to emphasize the distinction between pre-emption (the displacement of state law) and jurisdiction (the power to "lodge" a case in federal court). *Id.* Further highlighting this distinction, the Court noted that "federal-court jurisdiction was solidly grounded" in *Clearfield*, and the case instead "presented a vertical choice-of-law issue." *Id.* at 691.

The *Empire* Court reasoned the case was not "pervasively federal" because the reimbursement claim did not implicate "FEHBA-authorized contracts at large," but rather reimbursement provisions that "depend upon a recovery from a third party under terms and conditions ordinary governed by state law." *Id.* at 692. And while "distinctly federal interests are involved" in a reimbursement claim, such a claim is "not a prescription of federal law." *Id.* at 696–97 ("[W]hile the OPM–BCBSA master contract provides for reimbursement, FEHBA's text itself contains no provision addressing the reimbursement or subrogation rights of carriers."). Accordingly, "[t]he state court in which the personal injury suit was lodged is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine the lawyer's part in obtaining, and his or her fair share in, the tort recovery." *Id.* at 701. The court ultimately instructed federal courts to "await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States." *Id.* at 683.

Shortly after *Empire*, in *Blue Cross Blue Shield of Illinois v. Cruz* (*Cruz II*), the Seventh Circuit considered whether a federal district court had federal question jurisdiction over a reimbursement action brought by Blue Cross. 495 F.3d 510 (7th Cir. 2007). In doing so, the Seventh Circuit "*squarely addressed*," *Ray*, 10 F.4th at 954 (emphasis added), the precise argument Blue Cross made again here in support of its removal of the entire case on federal

question grounds: that "the contract between the government and [Blue Cross] involves a unique federal interest that has to be protected against conflicting state laws, such as Illinois's common fund doctrine, . . . and that achieving this purpose requires that all disputes arising from the contract be resolved under federal common law." *Cruz II*, 495 F.3d at 512.

As in this case, the Seventh Circuit "rejected this argument" in *Cruz II*. *Ray*, 10 F.4th at 954. Applying *Empire*'s distinction between claims implicating FEHBA-authorized contracts at large and the benefits thereunder, on the one hand, and auxiliary claims involving reimbursements, on the other, the Seventh Circuit declined Blue Cross's invitation to fashion "a federal common law of federal employees' health benefits" and held that the district court properly dismissed the reimbursement action for lack of federal question jurisdiction. *Cruz II*, 495 F.3d at 512–14 ("The amount of benefits is determined by the plan and is indeed uniform across states and is unaffected by the common fund doctrine."); *Ray*, 10 F.4th at 954. The Seventh Circuit further emphasized "the principal that jurisdictional provisions should be simple and clear so that a party is not placed in the position of filing a suit in one court only to discover after years of litigating there that it has to start over . . . ." *Cruz II*, 495 F.3d 510, 513.

In its Notice of Removal and Opposition to the Rays' Motion to Remand, Blue Cross never addressed *Cruz II*. (Dkt. 1 at ¶¶ 20–23; Dkt. 16 at 7–10). They instead that argued this case, unlike *Empire*, satisfied both elements of the *Clearfield* doctrine. (*Id.*). Therefore, Blue Cross concluded federal common law governed the Motion for Adjudication because the dispute over Blue Cross's reimbursement lien involved a significant conflict between uniquely federal interests in

8

reimbursements pursuant to the FEHBA-authorized Plan and the operation of the Illinois common fund doctrine. (Dkt. 1 ¶¶ 20–23; Dkt. 16 at 7–10).

Blue Cross later argued *Cruz II* did not foreclose removal of the entire case on federal question grounds because of two subsequent legal developments. (Dkt. 28 at 2–4). Blue Cross makes the same arguments now with respect to the Motion for Attorney Fees. (Dkt. 35 at 5; Dkt. 46 at 6). First, Blue Cross argues the Supreme Court's decision in *Coventry Health Care of Missouri, Inc. v. Nevils* "undermine[d] relevant portions of *Cruz II*." (Dkt. 35 at 5; Dkt. 46 at 7–8); 581 U.S. 87 (2017). Second, Blue Cross argues a 2015 OPM regulation, 5 C.F.R. § 890.106, created a significant conflict between uniquely federal interests and state law that was absent in *Cruz II*. (Dkt. 35 at 6; Dkt. 46 at 6). Ultimately, both of Blue Cross's arguments fail.

b. The *Nevils* Decision

In *Coventry Health Care of Missouri, Inc. v. Nevils*, the Supreme Court held that, under FEHBA's express pre-emption provision, 5 U.S.C. § 8902(m)(1), "contractual subrogation and reimbursement prescriptions plainly 'relate to . . . payments with respect to benefits' . . . and override state law barring subrogation and reimbursement." 581 U.S. 87, 90–91 (2017). The provision states that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). The Court reasoned that, under FEHBA's "expansive" express pre-emption provision, "contractual provisions for subrogation and reimbursement 'relate to . . . payments with respect to benefits' " because "[w]hen a carrier exercises its right to either reimbursement or subrogation, it receives from either the beneficiary or a third party 'payment' respecting the benefits the carrier had previously paid." *Nevils*, 581 U.S.

at 95. But as the Seventh Circuit later held in *Ray*, 10 F.4th at 954, *Nevils* "cast no doubt" on *Empire*'s answer to "the discrete question whether 28 U.S.C. § 1331 gives federal courts subject-matter jurisdiction over FEHBA reimbursement actions." *Nevils*, 581 U.S. at 97 ("Our principal holding was that § 1331 did not confer federal jurisdiction."). Thus, *Nevils* is a choice-of-law case, not a jurisdiction case. *Ray*, 10 F.4th at 955 ("True, the Court discussed the 'distinctly federal interests' involved in *Nevils*, citing to [*Empire*] but it emphasized that the provision at issue was simply 'not a jurisdiction-conferring provision.' ").

First, Blue Cross argues that *Cruz II* did not foreclose removal on federal question grounds because *Nevils* undermined the decision by recognizing that "[s]trong and 'distinctly federal interests are involved' . . . in uniform administration of the [FEHB] program, free from state interference, particularly in regard to coverage, benefits, and payments." *Nevils*, 581 U.S. at 96 (quoting *Empire*, 547 U.S. at 696); (Dkt. 28 at 3; Dkt. 35 at 5–6; Dkt. 46 at 7–8). But a plain reading of *Empire* makes clear that *Nevils*'s recognition that reimbursement disputes implicate uniquely federal interests broke no new ground: "the Supreme Court stated in *Empire* . . . that though FEHBA reimbursement disputes implicate 'distinctly federal interests' (like the OPM-BCBSA contract's negotiation by a federal agency), federal common law does not govern them because 'countervailing considerations control'—namely that a reimbursement right predicated on a FEHBA authorized contract 'is not a prescription of federal law.' " *Ray*, 10 F.4th at 953 (7th Cir. 2024) (*Empire*, 547 U.S. at 696 (noting that "reimbursements are credited to a federal fund")).

Contrary to Blue Cross's reading, *Empire* and *Cruz II* did not hold that FEHBA reimbursements do not implicate uniquely federal interests whatsoever. Instead, *Empire* held that the absence of a significant conflict between a uniquely federal interest in reimbursement claims and state law that would warrant the displacement of state law and establish federal question

10

jurisdiction on the basis of federal common law. *Empire*, 547 U.S. at 693. Similarly, *Cruz II* held that the uniquely federal interests in this area, which primarily concern uniform administration of the FEHB program and its benefits, ultimately do not extend to whether a state's common fund doctrine should modify a reimbursement claim grounded in state contract law. *Cruz II*, 495 F.3d at 513–14; *Ray*, 10 F.4th at 954; *see Rodriguez v. Fed. Deposit Ins. Corp.*, 589 U.S. 132, 136 (2020) ("In the absence of congressional authorization, common lawmaking must be 'necessary to protect uniquely federal interests.' ") (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964)); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28 (1979) ("Controversies directly affecting the operations of federal programs . . . do not inevitably require resort to uniform federal rules.").

Second, Blue Cross argues *Nevils* rejects *Cruz II*'s distinction between benefits and reimbursements because *Nevils* held that contractual reimbursements provisions "relate to" payments "with respect to benefits" for the purposes of FEHBA's express pre-emption provision. *Nevils*, 581 U.S. at 95 (Dkt. 35 at 6). This argument also fails. The Seventh Circuit's discussion of the distinction between benefits and reimbursement in *Cruz II* drew from the Supreme Court's discussion of the difference between claims that implicate "FEHBA-authorized contracts at large," such as claims concerning the provision of benefits, and "auxiliary" claims concerning reimbursement. *Empire*, 547 U.S. at 693; *Cruz II*, 495 F.3d at 513–14.

The upshot of the Court's discussion was that, while benefits claims and reimbursement claims are both parts of the FEHB program in which the federal government has unique interests, their significance to those uniquely federal interests was different. *Empire*, 547 U.S. at 701 ("But those interests . . . do not warrant turning into a discrete and costly 'federal case' an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-

11

initiated tort litigation."). This is clear from the fact that "FEHBA's jurisdiction provision, 5 U.S.C. § 8912, opens the federal district-court door to civil actions "against the United States" and OPM regulation "instructs enrollees who seek to challenge benefit denials to proceed in court against OPM[.]" *Id.* at 696 ("Had Congress found it necessary or proper to extend federal jurisdiction further, in particular, to encompass contract-derived reimbursement claims between carries and insured workers, it would have been easy enough for Congress to do."). *Nevils*'s holding that contractual reimbursement provisions fall under FEHBA's "expansive" express pre-emption provision because they "relate to" payments "respecting benefits" in no way casts doubt on the differences between benefits and reimbursements for jurisdictional purposes discussed in *Empire* and *Cruz II*. *Nevils*, 581 U.S. at 95–96.

    c. **2015 OPM Regulation**

In 2015, OPM promulgated a reimbursement regulation, 5 C.F.R. § 890.106, which "provides that a FEHB carrier is entitled to pursue reimbursement recoveries, 5 C.F.R. § 890.106(a), and that a carrier's reimbursement right supersedes other parties' rights, *id.* § 890.106(e)[.]" *Ray*, 10 F.4th at 955. Blue Cross argues this reimbursement regulation suggests *Cruz II* did not foreclose removal of the entire case on federal questions grounds because the regulation demonstrates a uniquely federal interest in reimbursements and creates a significant conflict between uniquely federal interests and state law. (Dkt. 35 at 6–7; Dkt. 46 at 7). But, as the Seventh Circuit reasoned in this case, the reimbursement regulation does not establish a uniquely federal interest sufficient to displace state law with federal common law because, as *Empire* and

*Cruz II* made clear, "a carrier's reimbursement right is still not a prescription of federal law." *Ray*, 10 F.4th at 955.

Finally, given that (1) the federal government has issued a reimbursement regulation addressing the issue of the priority of rights raised by the common fund doctrine and carrying the force of law pursuant to FEHBA, and that (2) under *Nevels* contractual reimbursement provisions preempt state law limiting reimbursements pursuant to FEHBA's express preemption provision, a clearly established first principle of federal common lawmaking under *Clearfield* further foreclosed Blue Cross's argument in support of removal on federal question grounds. That is, federal common lawmaking may be appropriate only where there is a "gap" in federal law. *Rodriguez v. Fed. Deposit Ins. Corp.*, 589 U.S. 132, 134 (2020); *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593 (1973) ("At the very least, effective Constitutionalism requires recognition of power in the federal courts to declare, as a matter of common law or 'judicial legislation,' rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress.") (citation omitted). In the presence of this federal statutory and regulatory law addressing reimbursements, a gap in federal law—the basic precondition for federal common lawmaking—was missing. Blue Cross's removal of the entire case on federal questions was therefore clearly improper and foreclosed by clearly established law. The Rays are therefore entitled to fees incurred as a result of the improper removal of the case on federal questions grounds pursuant to 28 U.S.C. § 1447(c).

## II. Amount of Attorney Fees

Because the Motion for Adjudication was properly removed on federal officer grounds, the Rays are entitled under § 1447(c) to "any actual expenses, including attorney fees, incurred [only] as a result of" the improper removal of the case on federal question grounds. 28 U.S.C. § 1447(c);

*see Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997) ("We interpret ['incurred as a result of removal'] to limit the litigation expenses that may be awarded under this section to fees and costs incurred in federal courts that would not have been incurred had the case remained in state court."). Here, Section 1447(c) "expressly limits fee awards to actual outlays." *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 366–67 (7th Cir. 2000). Section 1447(c) also entitles the Rays to expenses on appeal related to removal on federal question grounds. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000). The Rays bear the burden of proving the amounts actually incurred. *Hotline Indus., Inc.*, 236 F.3d at 368. And the Court has "discretion 'to tailor the documentation requirement' according to the stakes involved[.]" *Id.* (quoting *Garbie v. DaimlerChrysler Corp.*, 211 F.3d at 411).

a. **Documentation of Actual Attorney Fees Incurred**

Blue Cross argues that the Rays "have not proved that they actually incurred the amounts sought in the Motion" as required by *Hotline Industries*, because the Rays "list time entries rather than providing invoices" or "evidence (such as declarations from themselves of their attorneys) that they actually paid for any of the attorney time listed in the time entries." (Dkt. 35 at 10; Dkt. 46 at 11); *see* 236 F.3d at 366–67. Because, as discussed below, the Rays do not need to show that

14

they have been billed for the attorney fees to incur, the Court in its discretion finds the Rays' submission of time entries to be sufficient documentation of time spent.

### b. Availability of Attorney Fee Awards for Work Based on Contingency Fee Arrangements

Further, Blue Cross baldly alleges that since "it is highly likely that [the Rays'] attorneys are working on a contingency basis,"[4] the Rays are foreclosed from receiving a fee award under *Hotline Industries* and § 1447(c). (Dkt. 35 at 10). *Hotline Industries*, however, did not involve private attorneys working on a contingent fee basis. Instead, it concerned salaried government attorneys representing the state of Wisconsin. 236 F.3d at 365; *see Lawrence ex rel. Est. of Lawrence v. Biotronik, Inc.*, 2005 WL 2338812, at *2 (N.D. Ill. Sept. 20, 2005) (finding *Hotline Industries* did not prevent a fee award based on contingency fee arrangement). Because the client was a state government that employs its attorneys on a salary basis, the Seventh Circuit held the "actual attorney's fees incurred" under § 1447(c) were best measured by "a proportional share of the salaries of its attorneys handling the removal" and "related overhead costs." *Hotline Industries*, 236 F.3d at 367–68.

Whether § 1447(c) permits attorney fee awards for work done on a contingency fee basis appears to be an open question in this Circuit. *See Tenner v. Zurek*, 168 F.3d 328, 330 n.3 (7th Cir. 1999) ("We reserve for another day the appropriate application of § 1447(c) in [the] circumstances [where the party has a contingency fee agreement with counsel]."). Despite a lack of binding precedent, this Court finds that existing Seventh Circuit and Supreme Court precedent analyzing the text and purpose of § 1447(c)'s fee scheme supports the conclusion that § 1447(c) does permit

---

[4] The Rays seem to concede their attorneys are indeed working on a contingency fee basis by arguing that "[t]he improvident removal of [an] entire case just days before trial is virtually not contemplated by any contingency agreement." (Dkt. 44 at 9).

15

fee awards for work done on a contingency fee basis. This Court also finds persuasive the many decisions of other courts finding the same.

In *Hotline Industries*, the Seventh Circuit recognized that part of the rationale of § 1447(c)'s fee scheme is that "[i]mproper removal prolongs litigation (and jacks up fees)," such that "when [a party's] adversary wrongfully drags them into a second judicial system the loser must expect to cover the incremental costs" and "the victor should be made whole." 236 F.3d 363, 367–68 (quoting *Garbie*, 211 F.3d at 411). More so, the Supreme Court has emphasized that the rationale of § 1447(c)'s fee scheme includes "deter[ring] removals sought for the purpose of prolonging litigation and costs on the opposing party". *Martin*, 546 U.S. at 140. Indeed, "[both] of those reasons apply regardless of whether the immediate burden of defeating an improper removal falls on the plaintiff paying an hourly rate or on a plaintiff's lawyer who took the case on a contingency." *Keesling v. Richman*, 2003 WL 1921812, at *2 (S.D. Ind. Apr. 18, 2003) (awarding attorney fees under § 1447(c) for work done on a contingency fee basis); *see Lawrence ex rel. Est. of Lawrence*, 2005 WL 2338812, at *2 (same); *see Ayos v. TRG Holdings G & H, LLC*, 2023 WL 4280808, at *2 (E.D. Ky. June 14, 2023) (same); *see Capital2Market Consulting, LLC v. Camston Wrather, LLC*, 2023 WL 2366975, at *6 (S.D.N.Y. Mar. 6, 2023) (awarding attorney fees under § 1447(c) where client had alternative fee arrangement with counsel); *see Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 401 (E.D.N.Y. 2019) (awarding attorney fees under § 1447(c) where client was represented by pro bono counsel); *see Speece v. Am. Fam. Mut. Ins. Co.*, 2011 WL 5827194, at *1 (S.D. Ind. Nov. 17, 2011) (awarding attorney fees under § 1447(c) for work done on a contingency fee basis); *cf. Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) ("The purpose of Rule 37 attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing

16

counsel's compensation is unaffected by the abuse, such as when the fee arrangement is a contingency fee[.]").

Given the rationale of § 1447(c)'s fee scheme, the words "actual expenses . . . incurred" do not "limit the district court's discretion to award attorneys' fees to a contingency fee litigant." *Gotro v. R & B Realty Grp.*, 69 F.3d 1485, 1488 (9th Cir. 1995). While "[Section] 1447(c) expressly limits fee awards to actual outlays," *Hotline Industries*, 236 F.3d 363, 366–67, this limitation only requires "that fees be *incurred*, [but] it does not require that those fees be billed to the client." *Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 402 (E.D.N.Y. 2019); *see Simenz v. Amerihome Mortg. Co., LLC*, 544 F. Supp. 2d 743, 746 (E.D. Wis. 2008) (finding that, where counsel working on contingent fee basis "forewent other paying work and paid costs out of pocket, [counsel] thereby incur[red] expenses in contesting removal"). Similarly, the Seventh Circuit in *Garbie* "treated a class action attorney's time, for which the plaintiffs had almost certainly not paid, as an 'actual expense' under § 1447(c)." 211 F.3d 407, 411; *see Simens*, 544 F. Supp. 2d 743, 746; *Keesling*, 2003 WL 1921812, at *2.

Lastly, *Hotline Industries* further concluded that the fee provision in § 1447(c) "more closely approaches [the fee provision of] . . . the Equal Access to Justice Act than the civil rights statutes that speak of a 'reasonable attorney's fees as part of the costs.' " 236 F.3d at 367–68. And under the Equal Access to Justice Act's fee provision, "it is 'well-settled' that the existence of an unsatisfied contingency . . . agreement does not preclude a fee award, even where the statute limits fees to those 'incurred' by the plaintiff in that action." *Murkeldove v. Astrue*, 635 F.3d 784, 791 (5th Cir. 2011); *see also Turner v. Comm'r of Soc. Sec.*, 680 F.3d 721, 724 (6th Cir. 2012). The

Court therefore concludes that attorney fee awards for legal work completed on a contingency fee basis are available under § 1447(c).

### c. Fee Amount

The starting point for determining a fee award under § 1447(c) is the actual costs incurred. *Hotline Industries*, 236 F.3d at 366–68. Nonetheless, the Court must nonetheless "ensure that the attorney fees and costs awarded to plaintiff for wrongful removal are reasonable under prevailing market rates and are the costs actually incurred." *Lawrence ex rel. Est. of Lawrence*, 2005 WL 2338812, at *3; *see MB Fin., N.A. v. Stevens*, 678 F.3d 497, 500 (7th Cir. 2012) (explaining that § 1447(c) permits fees for work "reasonably performed in defense of the district court's decision" on appeal); *see Wachovia Mortg., FSB v. Toczek*, 841 F. App'x 267, 269 (2d Cir. 2021). "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experience attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). Further, the party seeking a fee award bears the burden of establishing the market rate for the work, otherwise the district court may in its discretion independently determine the appropriate rate." *Id.* If the court is unable to determine the attorney's true billing rate, the court may "look to the next best evidence" of the rate of "lawyers in the community of 'reasonably comparable skill, experience, and reputation.' " *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996).

Here, Mr. Christopher Patrick Ford and Ms. Joan M. Mannix, counselors for the Rays, request fees incurred from the improper removal of this case on federal question grounds in the amounts of $75,500 and $32,000 respectively. (Dkt. 44 ¶ 31–32). Each request is based on an hourly rate of $500. (*Id.* at 14, 16–17). Even so, the Rays fail to carry their burden to demonstrate

the requested rates are reasonable based on their own billing history or comparable cases. The Rays state that Mr. Ford and Ms. Mannix both have more than 30 years of experience, that Mr. Ford has obtained 32 recoveries of a million dollars or more, and that Mr. Ford was paid the same rate as part of a 2022 settlement in this district. (*Id.* at ¶ 31–32) Yet, they do not provide any documentation to establish it involved similar work as this case or that their request rate is comparable to those of similarly experience attorneys. While that's a start, the Rays' showing is insufficient for the Court to determine the rate is reasonable under prevailing market rates.

Thus, the Court instructs the Rays to file an updated fee petition providing additional documentation in support of the requested rate, for example including any evidence of counsel's rates in similar cases rates and evidence of rates charged by similarly experienced attorneys in similar cases. *See Montanez v. Simon*, 755 F.3d at 547; *Gonzalez v. Landes Foods, LLC*, 2018 WL 1626540, at *4 (S.D. Ind. Apr. 4, 2018).

## CONCLUSION

For the aforementioned reasons, the Court grants the Rays' Motion for Attorney Fees [34]. Pursuant to 28 U.S.C. § 1447(c), the Rays are entitled to an award of the costs incurred as a result of the improper removal of the entire case on federal question grounds. The Rays are directed to file an updated fee petition in compliance with this order by October 16, 2024.

Virginia M. Kendall
United States District Judge

Date: September 28, 2024