THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEARL RAY, and ANDREW RAY, SR., <br><br> Plaintiffs, <br><br> v. <br><br> MUHAMMAD TABRIZ, MD., <br><br> Defendant, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD ASSOCIATION, as carrier for Federal Employee Program, <br><br> *Lien Holder*. | Case No. 23-cv-1467 <br><br> Judge April M. Perry |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pearl Ray ("Plaintiff") was a federal employee who enrolled in a health benefits plan ("the Plan") through Blue Cross Blue Shield Association ("BCBS"). *See* Doc. 49-3. In 2016, Plaintiff was allegedly injured by her medical providers, and she subsequently brought a medical malpractice case. Doc. 11-6 at 1. In connection with those injuries, the Plan paid $218,954.87 in benefits. Plaintiff has now settled her claim against several of the medical providers, and BCBS has filed a lien against that settlement in the amount of $218,954.87. The case is before this Court on Plaintiff's motion for adjudication of the lien. Doc. 1-1, Doc. 11-6. Specifically, Plaintiff asks that this Court reduce BCBS's lien by a proportionate amount of attorneys' fees paid by Plaintiff to obtain the recovery, pursuant to Illinois' common fund doctrine. For the following reasons, Plaintiff's motion is denied.

### BACKGROUND

Plaintiff's BCBS Plan was promulgated pursuant to the Federal Employees Health Benefits Act ("FEHBA"), which as its name suggests creates a comprehensive program of healthcare insurance for federal employees. The FEHBA assigns to the Office of Personnel Management ("OPM") administrative and rulemaking authority over the program. *See* 5 C.F.R. §§ 8901-8913. Federal regulations promulgated by OPM contemplate that in certain circumstances health insurance providers may have a right to reimbursement for benefits previously paid. *See* 5 C.F.R. § 890.101(a) ("Reimbursement means a carrier's pursuit of a recovery if a covered individual has suffered an … injury and has received, in connection with that … injury, a payment from any party that may be liable … and the terms of the carrier's

health benefits plan require the covered individual, as a result of such payment, to reimburse the carrier out of the payment to the extent of the benefits initially paid or provided.") The OPM regulations further state that any "reimbursement recovery on the part of [an insurance provider] shall be effectuated against the recovery first (before any of the rights of any other parties are effectuated) …". 5 C.F.R. § 890.106(e).

The federal regulations do not speak to how, precisely, reimbursement is to be calculated. Rather, it is the Plan which states that "all recoveries" obtained "must be used to reimburse [BCBS] in full for benefits [BCBS] paid." *See, e.g.*, Doc. 1-6 at 137. The Plan further states that the "right of recovery is not subject to reduction for attorney's fees and costs under the 'common fund' or any other doctrine. *See id*.

Meanwhile, Illinois common law also has something to say about reimbursement in circumstances such as these. The Illinois common fund doctrine "permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Scholtens v. Schneider*, 671 N.E.2d 657, 662 (Ill. 1996). Virtually every state in the United States has a similar doctrine, and the doctrine is one of general applicability, used regardless of what type of litigation generated the common fund. *Id*. at 662-64 (noting application of the doctrine in class actions brought by creditors, taxpayers, labor unions, and shareholders). Application of the common fund doctrine results in reduction of any award from a common fund by a proportional amount of attorneys' fees that were expended to obtain the award.

## ANALYSIS

The question presented by this case is whether the BCBS Plan terms or Illinois common fund doctrine control the amount of BCBS's reimbursement. BCBS argues that the Illinois common fund doctrine cannot be applied because it is expressly preempted by the FEHBA. This is an argument that the Seventh Circuit has already found to be a plausible defense in this case, *Ray v. Tabriz*, 110 F.4th 949, 957 (7th Cir. 2024), and is based upon the Supreme Court's ruling in *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87 (2017).

The FEHBA contains an express preemption provision, which states:
> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."

5 U.S.C. § 8902(m)(l).

In *Nevils*, the Supreme Court was presented with the question of whether Missouri's anti-subrogation doctrine was expressly preempted by the FEHBA. *Nevils*, 581 U.S. at 90-91. In answering that question, the Court divided the preemption inquiry into two prongs: (1) whether the state doctrine "relates to health insurance or plans;" and (2) whether an FEHBA insurance carrier's contract governing subrogation or reimbursement "relate[s] to the nature, provision, or extent of coverage or benefits, including payments with respect to benefits." *Id.* at 94-95

(internal quotations omitted). In *Nevils*, there was no challenge to the first prong: the "parties agree[d] that Missouri's law prohibiting subrogation and reimbursement … 'relates to health insurance or plans.'" *Id*. With respect to the second prong, the Supreme Court held that "contractual provisions for subrogation and reimbursement 'relate to … payments with respect to benefits." *Id*. at 95. The Court noted that Congress' use of the phrase "relate[s] to" in a preemption clause "expresses a broad pre-emptive purpose" that is designed "to reach any subject that has a connection with or reference to, the topics the statute enumerates." *Id*. at 96 (internal quotations omitted). Because both prongs were satisfied, the Court found that Missouri's anti-subrogation doctrine was expressly preempted by the FEHBA. *Id*. at 91.

Plaintiff's briefs dedicate just two sentences to *Nevils* and assert that *Nevils* does not apply because *Nevils* involved an anti-subrogation doctrine that wholly prevented reimbursement, whereas the Illinois common fund doctrine just reduces the amount of reimbursement. Doc. 49 at 1-2. But Plaintiff offers no argument as to why a full ban on reimbursement as opposed to a reduced rate of reimbursement matters to the express preemption analysis in which the relevant question is whether the state law "relates to health insurance or plans." Instead, Plaintiff avoids that issue entirely, citing exclusively authorities that pre-date *Nevils,* many of which do not even involve the FEHBA. *See, e.g., Bishop v. Burgard*, 764 N.E.2d 24 (Ill. 2002) (discussing ERISA preemption); *Scholtens v. Schneider*, 671 N.E.2d 657 (Ill. 1996) (discussing ERISA preemption).

The best argument which could be made (which Plaintiff does not actually make, and therefore has waived) is that the Illinois common fund doctrine is a doctrine of general applicability having nothing to do with health insurance or health plans. However, the Missouri doctrine at issue in *Nevils* was similar, rendering void "as a matter of public policy any contract provision purporting to give [an] insurer" the right to collect a judgment received by an insured against a tortfeasor. *See Nevils v. Group Health Plan, Inc*., 418 S.W.3d 451, 458 (Mo. 2014) (dissent) (describing the nature of the state law at issue). Just like the Illinois common fund doctrine, the Missouri doctrine is applied in cases outside of the health insurance context. *See, e.g., Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418, 424 (Mo. App. Ct. 1965) (invalidating automobile insurance policy making subrogation a condition of the policy). And the only case that this Court has found anaylzing a doctrine of general applicability post-*Nevils* has concluded that even a generally applicable reimbursement rule can "relate to health insurance." *See Kaiser Foundation Health Plan, Inc., v. Maylone*, 2022 WL 3754902, at *7 (Wash. App. Ct. 2022) (finding that Washington's "made whole rule, a common law rule which provides that an insurer may not exercise a right to reimbursement unless and until an insured has received total compensation for their loss" is preempted by the FEHBA because "a state law that directly affects a health insurance company's right to reimbursement … plainly 'relates to' a health plan"). This Court agrees that even a generally applicable law can "relate to health insurance or plans" in a case like this one where it is being used to limit a health insurer's reimbursement.

BCBS also argues that regular conflict preemption principles would also result in a finding of preemption here, given OPM's regulation giving BCBS priority over all others attempting to assert an interest in Plaintiff's settlement. *See* 5 C.F.R. § 890.106(e). Plaintiff does not address § 890.106(e) at all, instead insisting that "nowhere in the regulations is there any statement asserting that that reimbursement is exempt from reduction by the 'common fund

doctrine.'" Doc. 49 at 4. While the regulation may not use the words "common fund doctrine," this Court believes that it is quite clear that is what the regulation intended when it stated: "reimbursement recovery on the part of a FEHB carrier shall be effectuated against the recovery first (before any of the rights of any other parties are effectuated) ...". *See* 5 C.F.R. § 890.106(e). In any event, given the Court's finding on express preemption it is not necessary for the Court to reach the question of conflict preemption at this time.

## CONCLUSION

*Nevils* is binding precedent and requires a finding that Illinois' common fund doctrine is expressly preempted by the FEHBA. As a result, Plaintiff's motion requesting this Court to find that BCBS's lien is subject to Illinois' common fund doctrine, Doc. 1-1, Doc. 11-6, is denied.

Entered: 1/27/2025

*April M Perry*

United States District Judge